**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JACOB K. BELL,
130 Powhatan Ave.
Columbus, Ohio 43204

      Plaintiff,

v.

INDUSTRIAL COMMISSION OF OHIO,
30 W. Spring St.,
Columbus, Ohio 43215

    And

THOMAS H. BAINBRIDGE,
2190 Lane Woods Dr.
Columbus, Ohio 43221

    and

KAREN GILLMOR,
514 Hedgegate North Ct.
Tiffin, OH 44883

    and

LINDA BOZEMAN,
2083 Waymont Rd.
Columbus, Ohio 43229

    Defendants.

CASE NO.

JUDGE

MAGISTRATE

**VERIFIED COMPLAINT
WITH JURY DEMAND**

## VERIFIED COMPLAINT

Now comes Plaintiff Jacob K. Bell, by and through counsel, and for his Verified Complaint against Defendants Ohio Industrial Commission ("OIC"), Thomas Bainbridge, Karen Gillmor, and Linda Bozeman, hereby states and alleges as follows:

## PARTIES

1.　　Plaintiff Jacob K. Bell is an individual residing in Franklin County, Ohio, and was at all times relevant herein an employee of Defendant OIC.

2.　　Defendant OIC is an agency of the State of Ohio, having its primary place of business in Franklin County, Ohio.

3.　　At all times relevant herein, Defendants Bainbridge, Gillmor, and Bozeman were employees and agents of Defendant OIC.

4.　　Upon information and belief, Defendant Bainbridge is a resident of the County of Franklin, State of Ohio.

5.　　Upon information and belief, Defendant Gillmor is a resident of the County of Seneca, State of Ohio.

6.　　Upon information and belief, Defendant Bozeman is a resident of the County of Franklin, State of Ohio.

## JURISDICTION AND VENUE

7.　　Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

8.　　This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

9.　　Subject matter jurisdiction over this action is therefore conferred pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States.

10.     This Court has personal jurisdiction over Defendants because Defendants have their principal place of business in the State of Ohio, conduct business in the State of Ohio, and/or reside in the State of Ohio.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant OIC has its principal place of business in the County of Franklin, State of Ohio; a substantial part of the events giving rise to Plaintiff's claims occurred in the County of Franklin, State of Ohio; and, upon information and belief, all Defendants have their principal place of business in and/or reside in the State of Ohio.

12.     Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit, and this Complaint is filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit A and is incorporated herein by reference.

## FACTUAL BACKGROUND

13.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

14.     Plaintiff was employed by Defendant OIC from February 2012 through his termination in August 2018. From 2012 through 2015, Plaintiff served as OIC's Deputy Director of Legislation, and from 2015 until his termination in August 2018, Plaintiff served as OIC's Deputy Director of Operations and Legislation.

15.     Throughout his employment with OIC, Plaintiff was repeatedly subjected to discrimination based on his race as a Caucasian man and his sex and sexual orientation as a gay man.

16.     From February 2012 through February 2013, Plaintiff worked under the supervision of Karen Gillmor, the Chairman and appointing authority of OIC at that time.

17.     While supervising Plaintiff, Gillmor made numerous homophobic statements, including but not limited to, "[i]t's nuts the Governor's advisers are gay," "I can't believe the head of the Franklin County GOP is gay," and "[c]an you believe the parties those people [LGBTQ+ people] have?! The stuff that goes on?" Gillmor also stated that it was "disgusting" to hire gay people.

18.     In or around January 2013, Plaintiff was struggling with his sexual orientation and with the hostile and homophobic work environment at OIC. As a result, Plaintiff began to suffer from depression.

19.     Shortly thereafter, in early 2013, Plaintiff took a medical leave of absence from work to treat his depression.

20.     At the time he took his medical leave, Plaintiff did not disclose the underlying reason to his coworkers. As a result, vicious rumors and fabricated allegations began to be spread within OIC regarding Plaintiff and his sexual orientation.

21.     As a result of these fabricated allegations by Plaintiff's supervisor and co-workers, which investigations were motivated in whole or in part by Plaintiff's exercise of medical leave and/or his sexual orientation, OIC conducted an investigation into Plaintiff's management style. The investigation concluded that Plaintiff had not engaged in any wrongful behavior in the workplace. The investigation also revealed that the rumors within OIC regarding Plaintiff's sexual orientation originated and were perpetuated in large part by Gillmor and Linda Bozeman, an African-American coworker of Plaintiff.

22. Upon returning from leave, Plaintiff confirmed his sexual orientation, i.e. that he was gay, to his coworkers and supervisors, in light of the rumors regarding his sexual orientation that greeted him upon his return.

23. Around the time Plaintiff disclosed his sexual orientation, Gillmor was removed as Chairman of OIC by then-Governor Kasich. She continued at OIC as a commissioner.

24. Upon information and belief, Gillmor was furious when she learned of Plaintiff's sexual orientation and stated that she was upset that she had been the one to hire Plaintiff. Gillmor also wrongfully blamed Plaintiff for her removal as Chairman of OIC.

25. Thereafter, Gillmor engaged in a campaign of retaliation against Plaintiff that included, but was not limited to lodging false accusations against Plaintiff in an effort to get him terminated. As a part of this campaign of retaliation, Gillmor, in consultation with other OIC employees, instituted, upon information and belief, at least three or more investigations into Plaintiff's conduct, managerial style, and work performance. In each instance, Plaintiff's conduct and behavior were found not to warrant discipline.

26. In one of the investigations, Gillmor accused Plaintiff of being "unstable" and asserted that he was having a "bromance" with Defendants Timothy Adams, OIC's Executive Director, and Defendant Thomas Bainbridge, who had replaced Gillmor as Chairman and Plaintiff's supervisor.

27. Each of Gillmor's complaints and/or accusations against Plaintiff was investigated by OIC and/or the Inspector General's Office, and Plaintiff was exonerated, with Bainbridge stating, "we've investigated and we've investigated and IG has investigated and I agree there's nothing there."

28.     Even though each complaint against Plaintiff was found to be without merit, Gillmor and Bozeman engaged in a pattern of conduct designed to harass Plaintiff and create a hostile work environment. This conduct included but was not limited to accusing Plaintiff of not doing his job at commissioner meetings, spreading additional rumors, and fabricating complaints about his management style and job performance in attempts to get him fired. Gillmor and Bozeman's actions were motivated in whole or in part by Plaintiff's race and/or sexual orientation.

29.     As part of his job duties and responsibilities, Plaintiff was required to notify OIC's appointing authority, which was Chairman Bainbridge at that time, of any modifications made to proposed legislation that might affect OIC's interest or operations.

30.     On or about August 24, 2017, Plaintiff attended a regularly-scheduled meeting of OIC's commissioners. Commissioners Gillmor and Jodie Taylor as well as Chairman Bainbridge were present. Additionally, OIC Chief Legal Counsel Rachel Black, OIC Executive Director Tim Adams, and other OIC staff were present.

31.     At this meeting, a discussion was held regarding a piece of proposed legislation under consideration by the Ohio General Assembly.

32.     During the meeting, Taylor publicly accused Plaintiff of failing to perform his job duties, complaining that Plaintiff had not notified the commissioners of several changes to the proposed legislation.

33.     Plaintiff responded, stating that he had notified Chairman Bainbridge of the changes to the proposed legislation. Pursuant to R. C. § 4121.03, as Chairman, Bainbridge was the appointing authority of OIC. He was therefore responsible for all administrative matters within OIC and had the power to exercise all non-adjudicatory powers of the commissioners.

Thus, providing notice to Chairman Bainbridge fulfilled performance of Plaintiff's job duties and responsibilities.

34.    In addition to providing Chairman Bainbridge notice of the changes to the proposed legislation, Plaintiff also disclosed all other individuals within OIC to whom he had provided notice.

35.    Plaintiff's statements were recorded in the meeting minutes for the August 24, 2017 meeting.

36.    At the same meeting, Gillmor stated that Plaintiff had refused to speak to her for years, despite the fact that his job required him to keep her informed about legislation pending in the Ohio General Assembly.  Plaintiff asked to be allowed to refute this allegation, but Bainbridge refused to grant Plaintiff time to respond or defend himself.

37.    That evening, Plaintiff received a phone call from Jodie Taylor, who advised him that everyone wanted him to leave OIC, implying that the underlying reasons were his race, Caucasian, and his sexual orientation, gay. Taylor also disclosed that Gillmor and Bozeman had been hoping to provoke a response from Plaintiff during the meeting that could be used to terminate him.

38.    Eleven (11) months later, on or about July 24, 2018, Gillmor and Taylor sought to obtain a commissioners' vote to revise the meeting minutes from the August 24, 2017 meeting. Gillmor and Taylor were still commissioners at this time, and Bainbridge was still the Chairman and appointing authority.

39.    The edits sought by Gillmor and Taylor only removed Plaintiff's statement defending himself against their allegations and his statement that he had notified Mr. Bainbridge

about the changes to the proposed legislation. They also sought to remove the individuals Plaintiff had notified of the changes to the proposed legislation.

40.     Gillmor, Taylor, and OIC's Chief Legal Counsel, Rachael Black, then revised the meeting minutes to suggest that Plaintiff had continuously failed to report critical legislative changes, as required by his job duties. The revised minutes wrongly indicated that Plaintiff failed to fulfill his duties.

41.     Gillmor and Taylor voted to approve the change to the meeting minutes, overriding Bainbridge's vote against the change. The changes were thus approved and were posted publicly on OIC's website.

42.     To date, the incomplete meeting minutes as revised by Gillmor and Taylor remain publicly posted on OIC's website.

43.     The changes to the meeting minutes were purposely designed to harm Plaintiff's professional reputation and were a part of the ongoing harassment and retaliation Plaintiff suffered at OIC.

44.     Upon information and belief, Gillmor and Taylor sought to harm Plaintiff based upon his sexual orientation and/or race.

45.     This harassment and retaliation pervaded all aspects of Plaintiff's work. Gillmor and Bozeman escalated their baseless complaints against Plaintiff, including but not limited to, accusing him of anger management issues, criticizing his management style, and stating he made them feel uncomfortable.

46.     Each of these complaints were fully investigated and found to be without merit.

47.     On or about August 23, 2018, Plaintiff received a report that stated that Bozeman had threatened violence against him.

8

48. Specifically, the report stated that Bozeman harbored desires of physical violence against Plaintiff that "made me want to kill him."

49. Given Bozeman's prior actions of retaliation and harassment, including but not limited to instigating vicious rumors and lodging baseless complaints, Plaintiff feared for his safety.

50. That same day, Plaintiff sent an email to OIC's Executive Director Timothy Adams and its Chief Legal Counsel Rachel Black about his concerns for his safety because of Bozeman's threat. Plaintiff also stated that there were numerous other false statements made by Bozeman in the report which Plaintiff wanted the opportunity to address and refute.

51. Later that day, Plaintiff met with Adams, Black, and Bainbridge to discuss Bozeman's threat.

52. At said meeting, Plaintiff requested that Bozeman be put on administrative leave to protect Plaintiff's safety while Bozeman's threat was investigated. Plaintiff complained that Bozeman had engaged in discriminatory conduct due to her history of targeting him because of his race and sexuality, and further explained that this history made him fearful that her threat was real.

53. Placing an employee on administrative leave where they have threatened another employee's health or safety was authorized by OIC's own practices and procedures, as well as R. C. § 124.388.

54. However, Bainbridge resisted putting Bozeman on administrative leave while investigating her statements, instead proposing that both parties remain in the workplace despite a clear threat to Plaintiff's life.

55. Further, Bainbridge stated that placing Bozeman, an African-American, on leave at the request of Plaintiff, a Caucasian, would create too much racial tension in the workplace. Specifically, Bainbridge stated, "I'm not gonna do it [put Bozeman on administrative leave]. Maybe I'm at fault; I'll regret the decision but I am not going to open up this whole black white thing that was prevalent when [former OIC Executive Director Patrick] Gannon was down here in 0-8. I mean that's just going to create a whole new monster that we don't want to deal with."

56. Bainbridge resisted following OIC's procedures and putting Bozeman on leave to protect Plaintiff's safety, clearly stating that race was the delineating factor for his decision.

57. Plaintiff then asked Ms. Black for her opinion on whether administrative leave was appropriate under the circumstances. Ms. Black stated that she thought the threatening employee, Ms. Bozeman, should be put on leave while her statements were investigated. This would have been pursuant to OIC's policies and R. C. § 124.388.

58. However, Bainbridge stated, "I'm not going to create another whole great big series of problems with all the blacks we have in this agency. I'm not going to do it." He further stated, "you guys are gonna have every black in the agency even more upset with you; not many of them are upset with you right now. If you look at the problems we're having in regard to you, it's, it's white people."

59. Upon realizing that Bainbridge would not put Bozeman on leave, Plaintiff requested that he be put on leave instead, for his own safety.

60. Ultimately, Bainbridge allowed Plaintiff to submit a request for administrative leave, which request was approved on or about August 24, 2018.

61. On or about August 24, 2018, Plaintiff was given a letter dated the previous day, August 23, 2018, which stated that he was being placed on administrative leave pursuant to his

request, OIC policies, and R. C. § 124.388. The letter further stated that Plaintiff's leave was granted because of Bozeman's threat to his safety.

62.     At 6:00 p.m. that same evening, Adams and OIC's Director of Security Services, Chris Minter, came to Plaintiff's home while he was on protected leave. They gave him another letter, this time dated August 24, 2018. The August 24, 2018 letter stated that Plaintiff's employment with OIC was terminated.

63.     Said letter, which came one day after Plaintiff reported Bozeman's threat against his life, does not specify the reason for Plaintiff's termination. Upon information and belief, Plaintiff's termination was based on the false information given to Bainbridge, the appointing authority, by Gillmor and Bozeman, which was motivated by his race and/or sexual orientation.

64.     Upon information and belief, OIC did not investigate Bozeman's threat against Plaintiff before terminating him.

65.     It is clear from the facts that OIC's failure to investigate the threat against Plaintiff was based purely on Plaintiff's race and/or sexual orientation.

66.     Upon his termination, Plaintiff was listed as "Not Recommended for Rehire," which is a designation reserved for the most severe terminations, including but not limited to terminations of employees convicted of a felony. This mark has therefore harmed Plaintiff's reputation and has made it extremely difficult for him to find new employment.

### COUNT I
### RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2
### AGAINST DEFENDANT INDUSTRIAL COMMISSION OF OHIO

67.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

68.     42 U.S.C. § 2000e-2(a)(1) makes it unlawful for employers to discharge or otherwise discriminate against any individual on the basis of his race with respect to his compensation, terms, conditions, or privileges of employment.

69.     Defendant OIC is an employer within the meaning of 42 U.S.C. § 2000e.

70.     At all times relevant herein, Plaintiff was an employee of OIC.

71.     Throughout the course of his employment with Defendant OIC, Plaintiff was subjected to ongoing harassment and retaliation because of and on the basis of his race, Caucasian.

72.     This harassment and retaliation was undertaken by Gillmor, Bozeman, and others, all of whom were employees and agents of Defendant OIC.

73.     Defendant OIC refused to investigate or confront this harassment and retaliation.

74.     Defendant Bozeman, an agent of Defendant OIC and an African-American, targeted and harassed Plaintiff because of his race by, including but not limited to, spreading rumors about Plaintiff and repeatedly making several baseless accusations against Plaintiff in an attempt to get him terminated.

75.     Defendant Bozeman's harassment of Plaintiff because of his race was so severe and pervasive that it created a hostile work environment which permeated all aspects of Plaintiff's employment so as to become a condition of his employment.

76.     OIC knew or should have known of the harassment and failed to address the harassment or to take any corrective action to stop it.

77.     By failing to address Bozeman's harassment and targeting of Plaintiff on the basis of his race and by failing to remedy the hostile work environment Plaintiff was subjected to,

Defendant OIC discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment on the basis of his race in violation of 42 U.S.C. § 2000e-2.

78. Further, each time Defendant Bozeman made an accusation against Plaintiff, it was completely and fully investigated by Defendant OIC and the Inspector General's office. Each accusation was found to be without merit.

79. Conversely, when Plaintiff reported that Defendant Bozeman had threatened his life, Defendant OIC refused to investigate it. Instead, OIC terminated Plaintiff.

80. Upon information and belief, OIC never terminated a minority employee for reporting a coworker who threatened them, whereas Plaintiff, a Caucasian, was terminated immediately after reporting a threat against him made by a minority employee. Plaintiff was clearly treated differently than his similarly situated minority coworkers.

81. Defendant Bainbridge, OIC's then-Chairman, stated that investigating the threat to Plaintiff's life would "create another whole great big series of problems with all the blacks we have in this agency," "open up this whole black white thing," and "have every black in the agency even more upset." He further stated that white people were the cause of the problems within OIC.

82. Upon information and belief, OIC terminated Plaintiff based upon the false allegations brought to them by Defendant Bozeman, who was motivated by racial animus, and upon a desire to avoid upsetting minority employees by disciplining Bozeman for her threat.

83. Defendant OIC discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment on the basis of his race in violation of 42 U.S.C. § 2000e-2 when its agents and/or employees subjected him to severe and pervasive discrimination because of and on the basis of his race.

84.     OIC cannot proffer a legitimate, nondiscriminatory justification for refusing to investigate Bozeman's threat to Defendant's life, nor can OIC proffer a legitimate, nondiscriminatory justification for terminating Plaintiff that is not based on the racially-motivated false information and accusations brought by Defendants Gillmor and Bozeman.

85.     Thus, Defendant OIC has violated 42 U.S.C. § 2000e-2(a)(1) by discriminating against and terminating Plaintiff on the basis of his race.

**COUNT II**
**SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2**
**AGAINST DEFENDANT INDUSTRIAL COMMISSION OF OHIO**

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

87.     42 U.S.C. § 2000e-2(a)(1) makes it unlawful for employers to discharge or otherwise discriminate against any individual on the basis of the individual's sex or sexual orientation with respect to the individual's compensation, terms, conditions, or privileges of employment.

88.     Defendant OIC is an employer within the meaning of 42 U.S.C. § 2000e.

89.     At all times relevant herein, Plaintiff was an employee of OIC.

90.     Throughout the course of his employment with OIC, Plaintiff was subjected to ongoing harassment because of and on the basis of his sexual orientation by agents and/or employees of OIC.

91.     Gillmor, Plaintiff's superior and an agent and/or employee of OIC, repeatedly made homophobic statements in Plaintiff's presence, and upon learning of his sexual orientation, she expressed disgust that she had hired him. Gillmor also spread vicious rumors about Plaintiff and his sexuality to his coworkers and others at OIC.

92.     Gillmor further harassed Plaintiff by bringing numerous unfounded accusations and complaints against him in an attempt to have his employment terminated.

93.     Upon information and belief, Gillmor spread rumors about Plaintiff and brought the false accusations against him out of homophobic animus and a desire to cause an adverse employment action against him.

94.     Gillmor's harassment of Plaintiff because of his sexual orientation was so severe and pervasive that it created a hostile work environment which permeated all aspects of Plaintiff's employment so as to become a condition of his employment.

95.     OIC knew or should have known of the harassment and failed to address the harassment or to take any corrective action to stop it.

96.     Defendant OIC therefore discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment on the basis of his sexual orientation in violation of 42 U.S.C. § 2000e-2 when its agents and/or employees subjected him to severe and pervasive discrimination because of and on the basis of his sexual orientation.

97.     Defendant OIC further discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment on the basis of his sexual orientation in violation of 42 U.S.C. § 2000e-2 by failing to address Gillmor's harassment of Plaintiff on the basis of his sexual orientation and by failing to remedy the hostile work environment Plaintiff was subjected to.

98.     Further, upon information and belief, OIC terminated Plaintiff based upon the false allegations brought to them by Defendants Gillmor, which allegations were motivated by homophobic animus.

99.     OIC cannot proffer a legitimate, nondiscriminatory justification for refusing to address Gillmor's ongoing harassment of Plaintiff, nor can OIC proffer a legitimate, nondiscriminatory justification for terminating Plaintiff that is not based on the discriminatorily-motivated false information and accusations brought by Gillmor.

100.     Defendant has thus violated 42 U.S.C. § 2000e-2(a)(1) by discriminating against and terminating Plaintiff on the basis of his sexual orientation.

**COUNT III**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3**
**AGAINST DEFENDANT INDUSTRIAL COMMISSION OF OHIO**

101.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

102.     42 U.S.C. § 2000e-3(a) makes it unlawful for any employer to discriminate against any individual or employee because that individual or employee has opposed any practice made unlawful by Title VII of the Civil Rights Act of 1964.

103.     In the manner described above, Defendant OIC and its employees and/or agents engaged in a pattern and practice of race and sex discrimination against Plaintiff, culminating in a threat against Plaintiff's life.

104.     Upon learning of this threat, Plaintiff immediately reported it to Defendant OIC's Chairman, Director, and Chief Legal Counsel. At the same time, he reported the targeted racial and sexual discrimination he had faced throughout his term at OIC and stated that he feared for his safety.

105.     One day after reporting and objecting to the pattern of harassment he was facing, OIC terminated Plaintiff.

106.     Defendant OIC has not and cannot assert any non-retaliatory motive for Plaintiff's termination because, as Bainbridge admitted, every allegation against Plaintiff was fully investigated and found to be wholly without merit.

107.     Defendant OIC has therefore violated 42 U.S.C. § 2000e-3(a) by terminating Plaintiff in retaliation for having reported and opposed OIC's violations of Title VII of the Civil Rights Act of 1964.

**COUNT IV**
**DEPRIVATION OF EQUAL PROTECTION RIGHTS GUARANTTED**
**BY THE FOURTEENTH AMENDMENT OF THE UNITED**
**STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 AGAINST**
**DEFENDANTS BAINBRIDGE, GILLMOR, AND BOZEMAN**

108.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

109.     42 U.S.C. § 1983 states that any person acting under color of law who deprives any citizen of the United States of any rights, privileges, or immunities secured by the Constitution of the United States or the laws enacted thereunder shall be liable to the citizen for such deprivation.

110.     The Fourteenth Amendment to the United States Constitution guarantees all citizens the right of equal protection under the law. The right to equal protection is a right of which a reasonable person would know.

111.     At all times relevant herein, Defendants Bainbridge, Gillmor, and Bozeman, as agents and/or employees of an agency of the state of Ohio, were acting under the color of law in their capacity as employees of OIC.

112.    At all times relevant herein, Plaintiff was and is a citizen of the United States, and thus was and is entitled to the full benefits of all rights, privileges, or immunities secured by the Constitution and laws of the United States, including the right to equal protection under the law.

113.    Defendants Gillmor and Bozeman engaged in a pattern of wrongful acts and targeted harassment against Plaintiff, including but not limited to spreading rumors about Plaintiff, reporting him for fabricated violations of his duties, and instituting baseless investigations into his management style and job performance.

114.    Upon information and belief, Defendants Gillmor and Bozeman engaged in this harassment knowingly, intentionally, and with racial and homophobic animus; with motivation to discriminate against the Plaintiff, a gay Caucasian man, on the basis of his race and sexual orientation; and with the intent to cause an adverse employment action to Plaintiff.

115.    By targeting and harassing Plaintiff on the basis of his race and sexual orientation, Defendants Gillmor and Bozeman knowingly, intentionally, and purposefully deprived Plaintiff of his clearly established right of equal protection under the law.

116.    Defendant Bainbridge treated Plaintiff differently than similarly situated minority employees by refusing to investigate a clear threat against his life, whereas he investigated every single allegation brought against him by Bozeman, a minority employee.

117.    Upon information and belief, Defendant Bainbridge terminated Plaintiff based upon the false allegations brought to them by Defendants Gillmor and Bozeman.

118.    Defendant Bainbridge cannot proffer a legitimate, nondiscriminatory justification for refusing to investigate Bozeman's threat to Defendant's life, nor can he proffer a legitimate, nondiscriminatory justification for terminating Plaintiff that is not based on the false information and accusations brought to them by Defendants Gillmor and Bozeman.

119.    By treating Plaintiff differently than similarly situated minority and/or straight employees and by terminating him on the basis of the false information brought to them as part of ongoing racial and sexual discrimination, Defendant Bainbridge, while operating under color of law, knowingly, intentionally, and purposefully deprived Plaintiff of his clearly established right of equal protection under the law.

120.    Therefore, pursuant to 42 U.S.C. §§ 1983 and 1343, Plaintiff is entitled to relief for Defendant Gillmor, Bozeman, and Bainbridge's deprivation of his right to equal protection under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants as follows:

**Count I –** Racial Discrimination in Violation of 42 U.S.C. § 2000e-2 – Enter judgment against Defendant OIC for reinstatement, back pay, compensatory damages in an amount yet to be determined, but in excess of $25,000, punitive damages, plus prejudgment and post-judgment interest, costs, attorney fees, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count II –** Sex Discrimination in Violation of 42 U.S.C. § 2000e-2 – Enter judgment against Defendant OIC for reinstatement, back pay, compensatory damages in an amount yet to be determined, but in excess of $25,000, punitive damages, plus prejudgment and post-judgment interest, costs, attorney fees, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count III –** Retaliation in Violation of 42 U.S.C. § 2000e-3 – Enter judgment against Defendant OIC for reinstatement, back pay, compensatory damages in an amount yet to be determined, but in excess of $25,000, punitive damages, plus prejudgment and post-judgment

interest, costs, attorney fees, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count IV** – Deprivation of Equal Protection Rights Guaranteed by the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 – Enter judgment against Defendants Bainbridge, Gillmor, and Bozeman in an amount to be determined at trial, in excess of $25,000, plus prejudgment interest and post-judgment interest and costs, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

Respectfully submitted,

*/s/ Judith E. Galeano*
Judith E. Galeano (0048366) (Trial Attorney)
Justin A. Morocco (0079383)
Julia M. Lawrence (0098801)
Mowery Youell & Galeano, Ltd.
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Phone: (614) 764-1444
Fax: (614) 760-8654
Email: jgaleano@myglaw.com
Email: jmorocco@myglaw.com
Email: jlawrence@myglaw.com
*Attorneys for Plaintiff Jacob Bell*

## **JURY DEMAND**

Plaintiff hereby demands that a jury decide all claims in this Complaint.

Respectfully submitted,

*/s/ Judith E. Galeano*
Judith E. Galeano (0048366) (Trial Attorney)
Justin A. Morocco (0079383)
Julia M. Lawrence (0098801)
Mowery Youell & Galeano, Ltd.
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Phone: (614) 764-1444
Fax: (614) 760-8654
Email: jgaleano@myglaw.com
Email: jmorocco@myglaw.com
Email: jlawrence@myglaw.com
*Attorneys for Plaintiff Jacob Bell*

## VERIFICATION

I, Jacob Bell, being of legal age and sound mind, have read the foregoing Complaint, including all averments and allegations contained therein. I swear and affirm that the facts alleged are based upon my own knowledge, information, or belief, and that the facts, allegations, and information contained in the foregoing Complaint are true to the best of my knowledge.

_____
Jacob Bell

Sworn to before me and subscribed in my presence this \_\_4\_\_ day of \_\_November\_\_, 2020.

_____
Notary Public

MARK C. ZRONEK
NOTARY PUBLIC, STATE OF OHIO
My Commission Does Not Expire