IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACOB K. BELL,

       **Plaintiff,**

  v.                                        Case No. 2:20-cv-5750
                                                JUDGE EDMUND A. SARGUS, JR.
INDUSTRIAL COMMISSION OF        Magistrate Judge Chelsey M. Vascura
OHIO, *et al.*,

       **Defendants.**

**OPINION AND ORDER**

Before the Court is Defendants Thomas Bainbridge, Karen Gillmor, and Linda Bozeman's ("Defendants" or the "Individual Defendants") Motion for Judgement on the Pleadings, (ECF No. 22), to which Plaintiff has not responded. For the reasons stated herein, Plaintiff's motion is **GRANTED**.

        **I.**        **BACKGROUND**

**A. Plaintiff's Allegations**

On November 5, 2020, Plaintiff Jacob Bell filed the instant action. (ECF No. 1.) The allegations in his complaint, taken as true, are as follows:

From February 2012 to August 2018, Plaintiff was employed by Defendant Industrial Commission of Ohio ("OIC"), an agency of the State of Ohio. (*Id.* at ¶ 14.) For the first year of his employment, Plaintiff worked "under the supervision of Defendant Karen Gillmor, the Chairman and appointing authority of OIC at that time." (*Id.* at ¶ 16.) During that time period, Defendant Gillmor made numerous homophobic statements, including that it was "disgusting" to hire gay people. (*Id.* at ¶ 17.)

1

Around January 2013, Plaintiff, who is gay, and whom Defendant Gillmor hired, took a medical leave of absence from his employment to treat depression that partly stemmed from his work environment. (*Id.* at ¶¶ 18, 19.) When Plaintiff took this leave, he did not disclose the reason to his co-workers. (*Id.* at ¶ 20.) This spurred his coworkers to speculate and spread rumors related to Plaintiff and his sexual orientation. (*Id.*) These rumors, in turn, caused OIC to investigate "Plaintiff's management style." (*Id.* at ¶ 21.) The investigation concluded that Plaintiff had not engaged in any wrongful conduct and that the rumors related to his sexual orientation were spread by Defendants Gillmor and Bozeman. (*Id.*)

Upon return from medical leave, Plaintiff was confronted by the rumors that spread in his absence. (*Id.* at ¶ 22-23.) Around this time, Defendant Gillmor was removed from her position as Chairman of the OIC. (*Id.* at ¶ 23.) When Gillmor learned of Plaintiff's sexual orientation, she became "furious" because "she had been the one to hire Plaintiff" and "wrongfully blamed Plaintiff for her removal as Chairman of OIC." (*Id.* at ¶ 24.) From that point on, Defendant Gillmor "engaged in a campaign of retaliation against Plaintiff that included, but was not limited to, lodging false accusations against Plaintiff" to get him fired and spurring "at least three or more investigations into Plaintiff's conduct, managerial style, and work performance." (*Id.* at ¶ 25.) None of these investigations was fruitful, and all ultimately "exonerated" Plaintiff. (*Id.* at ¶ 27.) Nevertheless, Defendants Gillmor and Bozeman continued to "engage[] in a pattern of conduct designed to harass Plaintiff and create a hostile work environment," including "accusing Plaintiff of not doing his job and commissioner meetings, spreading additional rumors, and fabricating complaints about his management style and job performance" in order to get him fired. (*Id.* at ¶ 28.)

On August 24, 2017, during a regular OIC commissioner meeting (the "August 2017 Meeting") Commissioner Jodie Taylor "publicly accused Plaintiff of failing to perform his job duties, complaining that Plaintiff had not notified the commissioners of several changes" to certain legislation that had been proposed in the Ohio General Assembly. (*Id.* at ¶ 32.) Plaintiff responded that he had notified Defendant Bainbridge, then the Chairman of OIC, and other OIC members of the legislation changes, thus fulfilling his duties. (*Id.* at ¶ 33.) Defendant Gillmor then accused Plaintiff of refusing "to speak to her for years, despite the fact that his job required him to keep her informed" of pending state legislation. (*Id.* at ¶ 36.)

That evening, Jodie Taylor called Plaintiff and "advised him that everyone wanted him to leave OIC" and "impl[ied] that the underlying reasons" were the fact that he was a Caucasian gay man. (*Id.* at ¶ 37.) She noted that, earlier that day, Defendants Gillmor and Bozeman had sought to provoke a reaction that could be used to substantiate firing him. (*Id.*)

Eleven months later, on July 24, 2018, Defendants Gillmor and Taylor sought a commissioners' vote to remove Plaintiff's statements in defense of himself from the minutes of the August 2017 Meeting. (*Id.* at ¶ 39.) The change was approved, with only Defendant Bainbridge voting against the revision. (*Id.* at ¶ 41.)

One month later, on August 23, 2018, Plaintiff was notified that Defendant Bozeman had "threatened violence against him." (*Id.* at ¶ 47.) This caused Plaintiff to fear for his safety. (*Id.* at ¶ 49.) Plaintiff requested Defendant Bainbridge, as Chairman, to put Bozeman on administrative leave, which Bainbridge refused to do. (*Id.* at ¶¶ 52-58.) Accordingly, for his own safety, Plaintiff requested that he be put on administrative leave in her place. (*Id.* at ¶ 59.) Defendant Bainbridge agreed. (*Id.*)

The next day, August 24, 2018, Plaintiff received a letter which stated that, pursuant to his request, he had been placed on administrative leave. (*Id.* at ¶ 61.) That night, however, Plaintiff received another letter, which stated that his employment with OIC had been terminated entirely. (*Id.* at ¶ 62.) The letter gave no specific reason for his termination. (*Id.* at ¶ 63.)

**B. Plaintiff's Claims**

Plaintiff alleges that his termination was motivated by his race and/or sexual orientation. (*Id.*) He also alleges that, upon termination, he was listed as "Not Recommended for Rehire," and that this has hindered his ability to find new employment. (*Id.* at ¶ 66.)

Accordingly, Plaintiff now brings the following four claims:

1. **Counts I & II**: Racial and Sexual Orientation/Gender Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2 against Defendant OIC.
2. **Count III**: Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-2 against Defendant OIC.
3. **Count IV**: Deprivation of Equal Protection Rights Guaranteed by the Fourteenth Amendment of the United States Constitution Pursuant to 42 U.S.C § 1983 against Defendants Bainbridge, Gillmor, and Bozeman.

(*Id.* at ¶¶ 67-120.)

Defendants Bozeman, Gillmor, and Bainbridge now move this Court to dismiss Plaintiff's § 1983 claims (Count IV) against them on the basis that they are untimely. (ECF No. 22.) Plaintiff has not responded.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted,

4

Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

## III. ANALYSIS

Defendants argue that Plaintiff's § 1983 claims are time-barred by their corresponding statute of limitations. (ECF No. 22 at PageID #105); *see also Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) ("A complaint is subject to dismissal without any further proof if 'the allegations show that relief is barred by the applicable statute of limitations.'") (citation omitted). As Defendants note, § 1983 "does not provide a statute of limitations." (*Id.*) (citing *Watkins v. Columbus City Schs.*, No. 2:19-cv-394, 2020 U.S. Dist. LEXIS 47119, at *12 (S.D. Ohio Mar. 18, 2020)). Nevertheless, it is well-settled that, because § 1983 claims are "best characterized as tort actions for the recovery of damages for personal injuries . . . federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (en banc). In Ohio, that

5

statute is Ohio Revised Code § 2305.10, which, in relevant part, prescribes a two-year limitations period. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Banks,* 344 F.3d at 553).

While Ohio law determines what statute of limitations period applies, the issue of *when* said limitations period begins to run is a matter of federal law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). In the Sixth Circuit, that is when a plaintiff "knows or has reason to know that the act providing the basis of her injury occurred." *Ruiz-Bueno v. Maxim HealthCare Servs.*, 659 Fed. Appx. 830, 833 (6th Cir. 2016). To determine this "accrual" date, courts "look to the event that should have alerted the typical lay person to protect his or her rights." *Id.* at 834.

Here, Defendants argue that, Plaintiff was, at the latest, "alerted" to protect his constitutional rights on August 24, 2018, the date he was fired by OIC. (ECF No. 22.) Accordingly, they assert that, because Plaintiff's complaint was filed more than two years after that date, his § 1983 claims are time-barred by R.C. § 2305.10.[1] (*Id.*) The Court, in the absence of any response from Plaintiff, agrees. In other words, it is apparent that, on the face of Plaintiff's complaint, the latest "accrual" date for his § 1983 claims is August 24, 2018. That means those claims needed to be filed by August 24, 2020, to be timely. This did not happen, as Plaintiff did not file suit until November 5, 2020. (ECF No. 1.) Thus, his § 1983 claims against the Individual Defendants are time-barred.

---

[1] Defendants acknowledge that Plaintiff participated in various "administrative proceedings related to his Title VII claims" but assert that those "[did] not toll the statute of limitations on his § 1983 claims against the Individual Defendants." (ECF No. 22 at PageID #106-07) (citing *Watkins*, 2020 U.S. Dist. LEXIS 47119, at *14) ("As a primary matter, § 1983 claims are not tolled solely because a plaintiff engages in administrative proceedings. Absent a statutory directive to the contrary, the exhaustion of administrative remedies is not required for § 1983 claims.") Plaintiff, in failing to respond, does not point to any statute that would suggest otherwise.

## IV.

For the reasons stated herein, Defendants' Motion to for Judgement on the Pleadings (ECF No. 22.) is **GRANTED** in favor of the Individual Defendants, who are hereby **TERMINATED** from this action.

This case is to remain open on the docket of this Court.

**IT IS SO ORDERED.**

**2/28/2022**                                                                 **s/Edmund A. Sargus, Jr.**
**DATE**                                                                          **EDMUND A. SARGUS, JR.**
                                                                                          **UNITED STATES DISTRICT JUDGE**